1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J.A.M.,

                    Petitioner,

        v.

LAURA HERMOSILLO ET AL.,

                    Respondents.

Case No. C25-2736-SKV

ORDER DENYING WRIT OF
HABEAS CORPUS

14

## I.    INTRODUCTION

15        Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE")

16 at the Northwest ICE Processing Center in Tacoma, Washington.  He brings this 28 U.S.C. §

17 2241 habeas action through counsel to obtain release from detention on grounds that his

18 detention stems from an arrest that violated his Fourth and Fifth Amendment rights.[1]  *See* Dkt. 1

19 at 18–26.  Respondents, in a return to the petition, assert that Petitioner is subject to a reinstated

20 order of removal and therefore lawfully detained pursuant to 8 U.S.C. § 1231(a).  *See* Dkt. 5 at 1.

21 Having considered the Petition, the Return, Petitioner's Reply, Dkt. 8, and the governing law, the

22

23

_____

[1] Petitioner requested oral argument.  *See* Dkt. 1 at 1.  The Court finds itself positioned to rule on the papers and accordingly declines to hold oral argument.  *See* Local Rule W.D. Wash. 7(b)(4); *cf. Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("a district court can decide the issue without oral argument if the parties can submit their papers to the court.").

ORDER DENYING WRIT OF HABEAS CORPUS -
1

1    Court finds that Petitioner has not demonstrated, by a preponderance of the evidence, that he is

2    unlawfully detained.  Accordingly, the Court DENIES his habeas petition and DISMISSES this

3    case without prejudice.

II.    <u>BACKGROUND</u>

4

5    Petitioner is a native and citizen of Mexico.  *See* Dkt. 1 at 15.  Respondents assert that

6    Petitioner entered the United States unlawfully in 2005.  *See* Dkt. 5 at 3.  He was served with a

7    Notice of Expedited Removal and promptly removed to Mexico.[2]  *See* Dkt. 6-2 at 2; Dkt. 6-3 at

8    3.  Respondents allege that Petitioner reentered the United States at some later point without

9    inspection or parole.  *See* Dkt. 5 at 3.  He has since resided in the United States for

10   approximately twenty years and supports his U.S. citizen daughter.  *See* Dkt. 1 at 15; Dkt. 8 at 7.

11   On July 15, 2016, Petitioner's spouse filed a U visa petition that listed him as a derivative

12   beneficiary.  *See* Dkt. 1 at 16.  Following dismissal and a successful appeal, that application was

13   reopened and remains pending.  *See id.*  Petitioner does not disclose further details regarding his

14   application status or any benefits conferred on him during the pendency of that application.

15   Petitioner asserts that Respondents were made aware of his presence in the United States nine

16   years ago through that U visa petition.  *See* Dkt. 1 at 18.

17   On December 7, 2025, ICE detained Petitioner near his workplace in Portland, Oregon.

18   *See* Dkt. 1 at 15.  His 2005 order of removal was reinstated that same day.  *See* Dkt. 6-7 at 2.

19

20   ———————————————

[2] In his Petition, Petitioner challenges the authenticity of documents related to that alleged prior entry and removal furnished by the U.S. Attorney's Office in his prior habeas action.  *See* Dkt. 1 at 17.  The U.S. Attorney's Office appended scanned records to its return petition in this action.  *See* Dkts. 6-1–6-2 (2005 Record of

21   Deportable/Inadmissible Alien and Notice and Order of Expedited Removal); Dkt. 6-3 at 2 (2005 Notice to Alien Ordered Removed/Departure Verification).  In his Reply, Petitioner does not dispute that he was previously removed and appears to abandon his challenge to those documents' authenticity.  Instead, he pivots to asking the Court to

22   suppress fingerprint evidence obtained after his allegedly unlawful arrest that led to discovery of his immigration file.  *See* Dkt. 8 at 10.  Because Petitioner abandons his challenge to the authenticity of documents related to his

23   2005 removal and apparently concedes they surfaced as part of a file linked to his fingerprints, the Court deems undisputed the facts that Plaintiff was previously removed and thereafter reentered.  *See* Dkts. 6-1–6-2; Dkt. 6-3 at 2.

ORDER DENYING WRIT OF HABEAS CORPUS -
2

Petitioner claimed fear of returning to Mexico and was referred to United States Citizenship and Immigration Services ("USCIS") for a reasonable fear determination. *See* Dkt. 5 at 3. A USCIS officer made a negative reasonable fear determination, and Petitioner sought review by an immigration judge. *See id.* Following de novo review and a hearing, the immigration judge agreed with USCIS's negative fear finding and returned his case to the Department of Homeland Security ("DHS") to effect his removal. *See id.* at 3–4. Petitioner filed a Petition for Review with the Ninth Circuit, and a temporary stay of removal issued. *See id.* at 4.

On December 12, 2025, Petitioner filed his first petition for writ of habeas corpus in this Court, with the assistance of Northwest Immigrant Rights Project ("NWIRP"). *See* Dkt. 1 at 16. On December 17, a NWIRP attorney contacted Plaintiff's counsel in this action to notify him that the U.S. Attorney's Office had provided documents indicating that Petitioner was removed in 2005. *See id.* Based on those documents, NWIRP agreed to dismiss Petitioner's first habeas petition without prejudice. *See id.* On December 19, the Court dismissed Petitioner's first petition pursuant to that agreement. *See id.* On December 30, Petitioner filed the instant habeas petition.

### III.    <u>DISCUSSION</u>

Federal courts have authority to grant writs of habeas corpus to individuals in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, *2 (W.D. Wash. Oct. 7, 2025) (alterations in original) (quoting *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025), *vacated sub nom. Harsono v. Akerson*, No. 25-2413,

1   2026 WL 88549 (8th Cir. Jan. 8, 2026)); *see also Lambert v. Blodgett*, 393 F.3d 943, 969 n.16

2   (9th Cir. 2004) ("In . . . federal habeas proceedings, it is the petitioner who bears the burden of

3   proving his case." (citing *McKenzie v. McCormick,* 27 F.3d 1415, 1419 (9th Cir. 1994))).

4         Petitioner claims his present detention is unlawful for four broad reasons:  (1) his arrest

5   violated the Fourth Amendment and the Administrative Procedure Act ("APA"); (2) he was not

6   afforded a bond hearing within 48 hours; (3) recission of a prior ICE policy that directed agents

7   to refrain from taking civil immigration enforcement action against individuals with pending U

8   visa applications was arbitrary and capricious in violation of the APA; and (4) his arrest and

9   detention violated his Fifth Amendment right to due process.  *See* Dkt. 1 at 18–26.  In his Reply,

10  Petitioner abandons his arguments regarding APA violations while doubling down on

11  constitutional challenges to his arrest.  *See* Dkt. 8 at 5–10.  The Court circumscribes its analysis

12  accordingly.

13        The INA governs the detention and release of noncitizens during and after removal

14  proceedings.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527–29 (2021).  Title 8 U.S.C. §

15  1226 generally governs the detention and release of noncitizens before entry of a final order of

16  removal, while 8 U.S.C. § 1231 governs the detention and release of noncitizens who have been

17  ordered removed.  Respondents contend that Petitioner is lawfully detained under § 1231

18  because he is subject to a reinstated order of removal.  *See* Dkt. 5 at 4.  Petitioner responds that

19  whether he is subject to a reinstated order of removal is not the legal issue before the Court.  *See*

20  Dkt. 8 at 4.  Instead, he urges the Court to consider whether his December 7, 2025, arrest and

21  resulting detention violated his procedural due process rights.  *See id.* at 4–5.

22        Petitioner puts the cart before the horse.  Whether Petitioner is subject to, and detained

23  pursuant to, a reinstated order of removal, is a threshold question here.  Any process due to him

pre-arrest flows from that determination where, as here, there is no indication that Petitioner was conferred any benefits during the pendency of his derivative U visa application.

Petitioner does not dispute that he was removed from the United States in 2005, and uncontested documents in the record indicate as much.  *See* Dkts. 6-1–6-2; Dkt. 6-3 at 2.  On December 7, 2025, Petitioner was arrested in the United States, having returned without authorization or inspection.  8 U.S.C. § 1231(a)(5) provides that

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Pursuant to that provision, DHS reinstated Petitioner's order of removal on the date of his arrest.  *See* Dkt. 6-7 at 2 (Notice of Intent/Decision to Reinstate Prior Order).  As Petitioner was ordered removed, was actually removed, reentered, and is now subject to a reinstated order of removal, 8 U.S.C. § 1231 governs his detention and release.

Under § 1231(a), DHS is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. §§ 1231(a)(1)(B), (a)(2).  Three enumerated events trigger the start of that removal period:  (1) the date the order of removal becomes administratively final; (2) the date of the court's final order, if a stay of removal is ordered while the removal order is judicially reviewed; and (3) the date the alien is released from detention or confinement.  *See id.* § 1231(a)(1)(B).  Where an individual was previously removed and reentered, the removal period starts to run on the date the order of removal is reinstated because § 1231(a)(5) bars reopening or review of the prior order.  *See Castillo v. Chestnut*, No. 1:25-CV-01296-SAB-HC, 2026 WL 121652, at *11 (E.D. Cal. Jan. 16, 2026).  After the removal period expires, DHS has

discretionary authority to continue to detain certain noncitizens, including those found to be

inadmissible under § 1182, or to release them on supervision.  8 U.S.C. § 1231(a)(6).  Although

§ 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, ICE cannot

do so indefinitely.  *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's

detention to a period reasonably necessary to bring about that individual's removal from the

United States.  *See id.* at 701.  The Supreme Court determined that it is "presumptively

reasonable" for DHS to detain a noncitizen for six months following entry of a final removal

order while it works to remove the individual from the United States.  *Id*.  "After this 6-month

period, once the [noncitizen] provides good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future, the Government must respond with

evidence sufficient to rebut that showing."  *Id*.  If the Government fails to rebut the noncitizen's

showing, the noncitizen is entitled to habeas relief.  *See id*.  The Supreme Court further explained

that "for detention to remain reasonable, as the period of prior post removal confinement grows,

what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.*

Petitioner appears to be, at present, lawfully detained.  His order of removal was

reinstated on the day of his arrest, December 7, 2025.  Petitioner has been detained for less than

60 days at this point, which is well within the removal period contemplated by § 1231(a) and the

"presumptively reasonable" six-month period recognized in *Zadvydas*.  *See Johnson*, 594 U.S. at

528–29.  If Petitioner's removal is not effected within the removal period, only then may he

become eligible for release on supervision under § 1231(a)(3).  To the extent Petitioner

challenges the brief period of prior custody during and immediately following his arrest as

1     unlawful, he has not demonstrated that his claim remains live.[3]  *Cf. James v. Reese*, 546 F.2d

2     325, 328 (9th Cir. 1976) ("The contention that petitioner did not receive [pretrial] bail refers to a

3     prior detention and is presently moot." (citing *Plumley v. Coiner*, 361 F. Supp. 1117, 1121

4     (S.D.W. Va. 1973))).  Because Petitioner's *current* detention appears to be lawful, he has not

5     demonstrated that he is entitled to habeas relief from *that* custody.  *See Preiser v. Rodriguez*, 411

6     U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon

7     the legality of that custody, and that the traditional function of the writ is to secure release from

8     illegal custody.").

9          None of Petitioner's arguments call that conclusion into question.  To start, Petitioner

10    argues that his presence in the United States for the past two decades, Respondents' decision not

11    to arrest him in the nine years since he filed for a derivative U visa, and the lack of urgency

12    entitled him to a hearing prior to any deprivation of his liberty.  *See* Dkt. 8 at 7.  While this Court

13    has found that individuals released on conditions pending removal proceedings have a liberty

14    interest in maintaining their freedom and that due process therefore entitles them to a pre-

15    deprivation hearing, Petitioner has not demonstrated that his circumstances are comparable.  *See,*

16    *e.g.*, *Y.M.M. v. Wamsley*, No. 2:25-CV-02075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6,

17    2025) ("'absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due

18    process,' particularly when the government has previously determined that an individual is

19    eligible for release pending their removal proceedings." (citation omitted)).  Petitioner correctly

20    points out that U visa applicants and derivative beneficiaries can be granted parole or deferred

21    action during the pendency of their application.  *See* Dkt. 1 at 13; *see also* 8 C.F.R. §

22

23    ---

[3] The Court does not, in so finding, rule out the possibility that an unlawful arrest could have sufficient connection to a petitioner's present custody so as to call into question the lawfulness of that custody.  It simply finds that, on the facts and legal argument put forth by Petitioner here, he has not met his burden to show his present custody is in fact unlawful because of his arrest.

ORDER DENYING WRIT OF HABEAS CORPUS - 7

1    214.14(d)(2) ("USCIS will grant deferred action or parole to U–1 petitioners and qualifying

2    family members while the U–1 petitioners are on the waiting list.").  Courts in this District have

3    recognized that grants of deferred action prevent removal and are not automatically revoked

4    through a recipient's detention.  *See, e.g.*, *Ayala v. Bondi*, No. 2:25-CV-01063-JNW-TLF, 2025

5    WL 2209708, at *4 (W.D. Wash. Aug. 4, 2025); *cf. Gama v. Bondi*, No. 2:25-CV-01925-TL,

6    2025 WL 3559942, at *4 (W.D. Wash. Dec. 12, 2025) (granting habeas petition because U visa

7    applicant's "deferred action status prevents removal.").  Petitioner does not claim that *he* was

8    ever granted parole, deferred action, or a comparable benefit.

9         Petitioner's spouse's mere *filing* of a U visa petition listing him as a derivative

10   beneficiary does not amount to a Government decision on release or deferred action.  Filing a U

11   visa petition "has no effect on ICE's authority to execute a final order" of removal.  8 C.F.R. §

12   214.14(c)(1)(ii); *see also* 8 C.F.R. § 214.14(f)(2)(ii) (parallel provision for qualifying family

13   members).  "[A] petitioner who is subject to a final order may seek a stay of removal pending the

14   completion of the U-visa process."  *Velasco Gomez v. Scott*, No. C25-0522JLR-BAT, 2025 WL

15   1726465, at *1 (W.D. Wash. June 20, 2025) (citing 8 C.F.R. § 214.14(c)(1)(ii)).  Here, Petitioner

16   sought and obtained a temporary stay of removal from the Ninth Circuit.[4]  "[T]he time during

17   which . . . [that] stay is in effect" may afford grounds to extend Petitioner's detention, but there is

18   not yet reason to find Petitioner is not removable or that his detention has become indefinite

19   under *Zadvydas*.  8 C.F.R. § 214.14(f)(1)(ii).

20         Next, Petitioner argues his unlawful arrest imparts unconstitutional taint to his present

21   custody.  He invites the Court to apply the exclusionary rule, disregard all identity evidence

22   obtained through use of his biometric data post-arrest, and thereby disconnect him from his

23

---

[4] Neither party detailed the nature of Petitioner's Petition for Review, and the Ninth Circuit did not provide its rationale for granting a stay of removal.  *See A.M. v. Bondi*, No. 26-85, Dkt. 6 (9th Cir.).

ORDER DENYING WRIT OF HABEAS CORPUS - 8

immigration record for purposes of determining if his detention is lawful.  *See* Dkt. 8 at 10.

However, "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding

is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful

arrest, search, or interrogation occurred."  *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).

Accordingly, even if Petitioner's arrest was constitutionally infirm, the exclusionary rule does

not present a mechanism to transfer that taint to his current detention.

Next, Petitioner points out that the I-200 administrative warrant purportedly served on

him on the date of his arrest indicated his arrest was authorized pursuant to 8 U.S.C. § 1226(a).

*See* Dkt. 8 at 5 (citing Dkt. 6-5 at 2).  The argument is hard to follow, but he appears to assert

that, by reason of Respondents' reliance on § 1226(a) in that document, a right to pre-detention

notice and a hearing attached.  *See* Dkt. 8 at 5–6.  Again, regardless of whether the initial

deprivation of Petitioner's liberty was pursuant to § 1226(a), he is *currently* in custody pursuant

to § 1231 and Petitioner has not demonstrated that custody to be unlawful.

Finally, Petitioner alleges that his arrest stemmed from racial profiling and that

documentation was generated post-hoc to cover up Fourth and Fifth Amendment violations.  He

argues that Respondents, by sidestepping those issues, claim power "to detain anyone, anywhere,

for any reason (or no reason), leaving the individuals they choose to detain with no recourse by

writ of habeas corpus so long as Respondents could later fish out an ostensibly legitimate reason

to maintain their detention."  Dkt. 8 at 1.  The fast-expanding body of precedent in this District

demonstrates that such overreach will not lie.  The Court finds the alleged circumstances of

Petitioner's arrest concerning, but its inquiry is necessarily limited to whether his present

detention—not prior custody—violates the law.  Petitioner has not made that showing here.

Whether Petitioner could seek recourse for constitutional violations related to his arrest or

challenge allegedly arbitrary policy changes through another type of action is an entirely distinct matter. *See, e.g.*, *Sepulveda Ayala v. Noem*, No. 3:25-CV-5185-JNW, 2025 WL 1616075, at *2 (W.D. Wash. June 5, 2025) (addressing a motion for preliminary injunction where a detained noncitizen had brought APA and mandamus claims "to compel the adjudication of whether he should be placed on the U-visa waitlist[] and adjudication of the U visa itself"). Should further factual developments engender doubt as to whether Petitioner's detention violates the Constitution or federal law, Petitioner may reassert his claim for habeas relief.

## IV.   CONCLUSION

Because Petitioner has not shown, by a preponderance of the evidence, that his detention is unlawful, his petition for a writ of habeas corpus is DENIED and this case is DISMISSED without prejudice.

Dated this 2nd day of February, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER DENYING WRIT OF HABEAS CORPUS - 10